**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order.

AO 91 (Rev. 11/11)   Criminal Complaint

**United States Courts**
**Southern District of Texas**
**FILED**

# UNITED STATES DISTRICT COURT

for the

MAY 2 1 2014

David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| Shmou Ali Alrawabdeh | ) | |
| a.k.a Shmou Irsan | ) | |
| | ) | |
| | ) | |
| _Defendant(s)_ | ) | |

**H14-492 MJ**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___August 1995 to present___ in the county of ___Montgomery & Harris___ in the

___Southern___ District of ___Texas___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 371 (Felony) | Conspiracy to Defraud the United States from August 1995 to present |
| 18 U.S.C. 641 (Felony) | Theft of Public Money over $1000 |
| 42 USC 1383a (Felony) | Benefits Fraud in a continuing scheme from 1995 to present, a felony violation of 42 USC 1383a(a)(2) |

This criminal complaint is based on these facts:

See Attached Affidavit of Probable Cause

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Gary Dickens, Special Agent SSA-OIG
_Printed name and title_

Sworn to before me and signed in my presence.

Date: ___May 21, 2014___

_____
_Judge's signature_

City and state: ___Houston, Texas___

Nancy Johnson, United States Magistrate Judge
_Printed name and title_

H14-492 MJ

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Gary Dickens, upon being duly sworn, declare under penalty of perjury and say as follows:

1.      Affiant, Special Agent Gary Dickens, has been employed by the Social Security Administration, Office of the Inspector General (SSA/OIG) since September 2000.   Affiant is currently assigned to the SSA/OIG Field Office in Houston, Texas.   Prior to that, Affiant served as a U.S. Border Patrol Agent.   Affiant's current duties include investigating allegations of fraud within the programs administered by the Social Security Administration (SSA), which include the Supplemental Security Income (SSI) benefit program.   Affiant attended training in the areas of social security fraud, mail fraud, money laundering and various types of identity takeover schemes.   Affiant is authorized to obtain and execute Federal Arrest and Search Warrants.   The information set forth in this Affidavit is based upon your Affiant's personal knowledge and/or information provided to Affiant by other law enforcement agents and officers, witnesses and cooperating individuals the undersigned believes to be reliable and credible.

2.   Affiant is making this Affidavit in support of Criminal Complaint to be presented to the United States District Court for the Southern District of Texas in the matter of United States v. **Shmou Ali Alrawabdeh (9-16-77).**

3.   This complaint charges that **Shmou Ali Alrawabdeh** did the following Counts :

### Count I

In a continuing scheme, from on or about September 2004 to present the defendant did conspire to Defraud the United States, a felony violation of 18 U.S.C. 371, which makes it a crime if two or more persons conspire to defraud the United States and one or more of such persons do any act to effect the object of the conspiracy.

1

Count II

In a continuing scheme, from on or about September 2, 2004 to present the defendant did embezzle and steal benefits from the United States which had a value of $1000 or more from the United States or of any department or agency thereof which is a felony violation of 18 U.S.C. 641.

Count III

In a continuing scheme, from on or about September 2, 2004 to present the defendant did knowingly and willfully make or cause to be made, false statements and representations of a material fact for use in determining rights to any federal benefit which is a violation of 42 USC 1383a(a)(2), Benefits Fraud.

4. Affiant bases this information in part on his personal investigation and upon facts provided by witnesses which have proven to be true and correct through independent investigation.

## PROBABLE CAUSE

Based on the facts and information obtained during the investigation, Affiant believes there is evidence to support that Ali Mahmood-Awad Irsan (IRSAN), Shmou Ali Alrawabdeh (SHMOU) and Nadia Irsan (NADIA) engaged in a conspiracy to defraud the Social Security Administration (SSA) by concealing resources and making false statements, for the purpose of receiving Supplemental Security Income (SSI) benefits to which they were not entitled. The information obtained in the following paragraphs is based on my personal investigation and from the reports of the Federal Bureau of Investigation, the Social Security Administration Office of Inspector General, the Houston Police Department and other State and local agencies.

### Social Security Income

Social Security Income (SSI) is a needs-based and resource tested public assistance benefit provided by the United States which pays monthly benefits to the elderly, blind and disabled. Any resource, excluding a benefit recipient's primary vehicle and residence, must be disclosed to the SSA for the purpose of determining continued eligibility to SSI. Resources with an aggregate value in excess of $2,000 would make a person ineligible for SSI.

### Statement of Reporting Witness

On July 27, 2011, Nesreen Irsan (Nesreen) made a fraud referral to the Social Security Administration (SSA), a federal agency of the United States.   Nesreen alleged her father, IRSAN, was defrauding the SSI benefit program by concealing his living arrangements and resources from the SSA.   Nesreen claimed IRSAN lived with his wife, SHMOU, and that he had undisclosed money in multiple bank accounts, to include accounts in his native country of Jordan.   Nesreen further alleged that IRSAN failed to inform the SSA that Nasim Irsan (Nasim), his child who also receives SSI, was residing outside of the Unite States while IRSAN was receiving benefits for him, which is a violation of the Social Security Act.

In April 2013, Affiant was contacted by Special Agent (SA) Carlos Acosta, with the Federal Bureau of Investigation (FBI), relative to a multi-agency investigation involving IRSAN.

On May 16, 2013, Affiant met with and questioned Nesreen about IRSAN and his alleged fraudulent receipt of SSI benefits.   Nesreen provided the following information, in summary:

IRSAN has lied to the SSA and other public assistance agencies about whom he lives with and where various members of his family live for the purpose of committing fraud and receiving additional benefit money.   Prior to Nesreen running away, the entire family lived together in the home located at 19150 Irwin Keel Lane, Conroe, TX 77306.

Nesreen stated that IRSAN maintains three mailing addresses at his primary residence for the sole purpose of committing different types of fraud.   The true mailing address for the property is 19150 Irwin Keel Lane, Conroe, TX 77306.   This property is approximately five acres and has one residence/home on the property.   IRSAN placed two additional mailboxes in front of the property and they are labeled 19156 and 19160 Irwin Keel Lane.   IRSAN tells the SSA that SHMOU lives at 19160 and that Nasim lives at 19156, so he can receive additional SSI benefits. There is an old RV camper trailer parked near the 19160 mailbox and a tin shack/building near the 19156 mailbox.   Affiant is aware that neither SHMOU nor Nasim ever lived at these locations and there is no electricity or water at either location.   All of the family members reside in the home located at 19150 Irwin Keel.

Nesreen stated that IRSAN controls all of the money in the home and there are numerous bank accounts held in different family members' names.   IRSAN also has money which is held in foreign bank accounts located in Jordan.   IRSAN is careful not to hold too much money in the accounts in his name, because he knows it will affect his SSI benefits.

IRSAN has always entrusted NADIA Irsan, one of his daughters, with his money and he keeps money in a bank account that is held in her name.   IRSAN also keeps U.S. Currency in the attic of his home at 19150 Irwin Keel.   Nesreen does not know where the money is hidden in the attic, because IRSAN did not trust her and always sent NADIA into the attic to retrieve the money. IRSAN also has other hidden compartments in his home where he hides things of value.

Nesreen stated that IRSAN disabled a safety feature on a power saw that he purchased and intentionally cut himself with the saw.   IRSAN received a cash settlement from the company that made the saw.   Nesreen does not know how much IRSAN received from the settlement; however, IRSAN bragged about defrauding the company and never informed the SSA or the food stamp office about the cash settlement.

In 2009, IRSAN purchased residential properties located at 18470 Old Houston Road, Conroe, TX 77302 and 21269 White Oak Drive, Conroe, TX 77306.   IRSAN had NADIA listed as the owner of these properties so he and SHMOU could continue receiving SSI benefits.

IRSAN forced Nesreen to serve as the representative payee/fiduciary for SSI benefits paid to her sister, Nada Irsan (Nada).   IRSAN instructed Nesreen to inform the SSA that she lived with Nada at 21269 White Oak Drive, Conroe, TX 77306, even though they both resided with IRSAN at 19150 Irwin Keel and never lived at the White Oak Drive property.

Affiant also referenced a statement by Nesreen to the Montgomery County Sheriff's Office who reported that IRSAN opened multiple credit cards under multiple merchants in her name and fraudulently utilized the credit cards at various Harris County locations.   Nesreen stated that before she could contact the creditor and advise them of the fraud, all of the credit cards had been maxed out.   The credit card bills exceeded $25,000 in charges. IRSAN utilized one of the credit cards for a $15,000 purchase at Diamonds Unlimited at Deerbrook Mall in Harris County for Jewelry.   Nesreen also discovered insurance checks that were issued to her, which were fraudulently endorsed and cashed.   Nesreen believed IRSAN had NADIA forge her name on the checks and cashed the checks.

On May 14, 2014, Nesreen provided a supplemental statement in which she confirmed that NADIA is working with IRSAN and SHMOU to defraud the United States and others.   NADIA pays IRSAN's bills from money which IRSAN transfers to NADIA's bank account.   Nesreen stated that she overheard NADIA bragging that she had $55,000 in her bank account one time and IRSAN stated "do you think it's your money". IRSAN's fraud money is deposited into NADIA's bank account and IRSAN only maintains a minimum balance in his bank account to defraud SSA.

Nesreen stated that IRSAN commits SSA fraud, insurance fraud, credit card fraud and food stamp fraud. IRSAN has a coffee table drawer full of credit cards in other individuals names which he utilizes to commit credit card fraud.   Nesreen described the volume of credit cards as being similar to a stack of 4 decks of playing cards in height and IRSAN has multiple stacks of credit cards. IRSAN obtains credit cards in the name of others and pays a small amount on the card to enable him to obtain multiple credit cards in the individual's name.   After IRSAN obtains a large quantity of credit cards, he makes charges on the credit cards to the cards' maximum balance and IRSAN never pays the credit card balance.

### Ali IRSAN as fiduciary for Nada Irsan (knowledge of benefits requirements)

Through the examination of social security records, Affiant determined the following:

IRSAN first started receiving SSI benefits in August 1995 when he applied to serve as the fiduciary/representative payee for SSI benefits paid to his daughter Nada Irsan (DOB 3/20/1990). SSA records indicate Nada (Nada) receives SSI for mental retardation and that Nada's biological mother, Robin Jacobs (Jacobs), was initially selected as the payee for Nada's benefits.

On or about August 1995, IRSAN reported Jacobs to the SSA for fraud.   The report is documented in a written statement, which is signed by IRSAN, and was completed via SSA Form 795, "Statement of Claimant or Other Person."   In completing this statement, IRSAN demonstrated his knowledge of SSI reporting responsibilities by informing the SSA that Jacobs was living in Jordan from January 1990 – July 1993, while receiving SSI.   IRSAN stated that Jacobs "did not report her trip to SSI."   It should be noted that Jacobs later submitted medical records, which showed she was living in the United States during the time period IRSAN claimed she was living in Jordan.

On November 22, 1995, IRSAN reported Jacobs for fraud by informing the SSA that Jacobs sold two diamond rings, and that the rings had a combined value of over $20,000.   This statement was provided to an SSA employee and is documented on SSA Form 5002, "Report of Contact."   In providing this information, IRSAN again established his own knowledge of the resource limits and reporting responsibilities associated with the SSI benefit program.

IRSAN completed periodic SSI benefit reviews as Nada's fiduciary in 1995, 1998, 2001, 2002, 2008, 2011 and 2013.   During these reviews, SSA advised IRSAN of his reporting responsibilities both verbally and in writing and IRSAN acknowledged that he knew it was a crime to provide false statements or information to the SSA.

In January 2005, SSA received an alert from the Internal Revenue Service (IRS), which notified them that Nada owned a bank account that paid her interest of $189 in 2003.   The Harris County, Texas Clerk's Office advised SSA the interest was associated with a court-controlled account held in Nada's name and that the funds were placed in this account as part of a civil case in which a party was ordered to pay damages to Nada.   The clerk's office also advised the funds would not be released to Nada until her eighteenth birthday.

In October 2008, SSA questioned IRSAN about the funds held in the court-controlled account. IRSAN claimed that Nada owed her sister, NADIA, money and that Nada paid all of the money, approximately $8,000, to NADIA.   SSA informed IRSAN they would need proof that Nada no longer owned the funds from the civil case.   SSA subsequently received a letter signed by NADIA in which she stated that Nada paid her $8,800, and that Nada owed her this money based on money she borrowed from November 2002 – April 2008.

**Agent's Note:**  It should be noted that Nada was 12 years-old and NADIA was 18 years-old in 2002, when IRSAN claimed that Nada owed NADIA money. Subsequent investigation disclosed the above mentioned check was issued to IRSAN for Nada.   The check was endorsed by both IRSAN and NADIA and deposited into a Chase Bank account owned solely by NADIA in May 2008.

In May 2010, IRSAN's daughter, Nesreen, applied for and was selected to serve as the fiduciary for Nada's SSI benefits.    The payee change was made after Nesreen informed SSA that Nada lived with her at 21269 White Oak Drive, Conroe, TX 77306.

During the course of this investigation, Affiant interviewed Nesreen relative to her and her family's receipt of SSI benefits.   Nesreen stated that she ran away from home in June 2011 and that her father, IRSAN, forced her to serve as the payee for Nada's benefits.   During the time she served as Nada's fiduciary, Nesreen and the entire family lived at 19150 Irwin Keel, Conroe, TX. She stated that she and Nada never lived at the White Oak Drive address and that she never controlled or had access to the SSI benefits paid to Nada because all of the money in the household was controlled by IRSAN.

### Social Security Income claim by Ali IRSAN

On September 4, 2002, IRSAN applied for SSI benefits claiming that he had been disabled and unable to work since 1990. The claim was approved after a medical determination was made that IRSAN suffered from "fibromyalgia syndrome and chronic fatigue syndrome."   In completing the application for SSI, IRSAN claimed he had no form of income or resources and reported living at 19150 Irwin Keel, Conroe, TX with eight children.   IRSAN informed the SSA he was married to SHMOU but did not list her as a member of his household.   IRSAN has received uninterrupted monthly benefit payments from December 2002 to present.

On or about January 3, 2003, SSA mailed IRSAN a Notice of Award informing him that he met the disability and resource requirement for SSI. The letter contained a list of reporting responsibilities, which advised IRSAN that he was required to report if/when he moved; if anyone else moved out of or into his household; if his or other members of his household's income or resources changed; and that he could not receive SSI if his resources exceeded $2,000.

### Social Security Income claim by Ali IRSAN and SHMOU Ali Alrawabdeh

On September 2, 2004, IRSAN and SHMOU completed an application for SSI in which they informed the SSA that they were married and residing together at 19150 Irwin Keel, Conroe, TX. SSA created a "couples record" based on the statements provided by IRSAN and SHMOU.   This record was created after a medical determination was made that SHMOU qualified for SSI based on a disability that SSA classified as "affective disorders."

On March 7, 2005, IRSAN and SHMOU completed an SSI Review Statement in which they informed the SSA that they lived together with eight children at 19150 Irwin Keel, Conroe, TX.

IRSAN and SHMOU claimed that Aid to Families with Dependent Children was their only source of income that their only resources included a 1986 Mazda 626 valued at $400 and a 1996 Toyota Camry valued at $2,500. (**Note:**   SSA excludes one vehicle and a person's primary residence for the purposes of determining if an individual is resource eligible for SSI)

On March 22, 2005, SSA mailed IRSAN and SHMOU letters notifying them how their spouse's receipt of SSI affected their own SSI benefit payments and that their monthly benefit amounts would be reduced moving forward.   In summary, SSA informed IRSAN and SHMOU that their monthly benefit payments were being reduced from $579 to $434.50, due to both of them receiving SSI and living in the same household.

On or about May 11, 2005, IRSAN and SHMOU informed the SSA that SHMOU lived at 19160 Irwin Keel and that IRSAN lived at 19150 Irwin Keel.[1]   The monthly SSI benefits paid to IRSAN and SHMOU were increased from $434.50 to $579 based on the statements they provided, resulting in a net monthly increase of $289 ($144.50 for each claim).

### Ali IRSAN as fiduciary for Nasim Irsan

On October 10, 2010, IRSAN applied to receive SSI benefits on the behalf of his son, Nasim Irsan (Nasim), DOB 9/17/1993.   IRSAN reported that Nasim lived with him and five children at 19150 Irwin Keel, Conroe, TX and that Nasim had no resources.   Attached to the SSI application is a list of reporting responsibilities, which informed IRSAN that he was required to report any change in living arrangements or household resources to the SSA.   The changes to report also included a requirement to report if/when Nasim left the United States for more than 30 days.

In January 2011, the SSI claim was approved after a medical determination was made that Nasim qualified for SSI based on disabilities which SSA classified as "affective disorders" and "Attention Deficit Hyperactivity Disorder (ADHD)."

On January 14, 2011, IRSAN completed another SSI application on behalf of Nasim.   IRSAN advised SSA that Nasim moved from 19150 Irwin Keel to 19156 Irwin Keel.   IRSAN claimed that Nasim lived alone and paid $250 per month in rent at the 19156 Irwin Keel address.   The application does not address who the rent was paid to.

Continuing on January 14, 2011, IRSAN applied for and was selected to serve as the representative payee for Nasim's SSI benefits.   The payee application detailed the fiduciary reporting responsibilities IRSAN had as the representative payee for Nasim's benefits, which included requirements to report any and all household resource/income changes and to promptly notify SSA if/when Nasim left the United States for 30 consecutive days or more.   IRSAN also completed a "Summary Statement of Income and Resources" in which he claimed that he had no resources and that his sole source of income was his own SSI benefits.

---

1 As explained in later paragraphs, SHMOU did not reside at 19160 Irwin Keel, but rather continued to live with her husband at 19150 Irwin Keel.

On October 5, 2011, IRSAN completed a SSI benefit review at the SSA Office in Conroe, TX in which he informed SSA that Nasim lived at 19156 Irwin Keel. IRSAN also stated that Nasim had not been outside of the United States for more than 30 consecutive days since January 2011.

On March 24, 2014, Special Agent David Egeland, U.S. Department of Homeland Security (DHS), provided Affiant with certified records relative to the foreign travel of IRSAN and Nasim. Review of the DHS travel records disclosed IRSAN and Nasim left the United States together on June 12, 2011 via an international flight from Houston, Texas to Dubai, United Arab Emirates. IRSAN returned to the United States on June 21, 2011 via an international flight from Dubai to Houston.   Nasim Irsan did not return to the United States until September 27, 2011, 81 days after his departure on June 11, 2011, and he returned via an international flight from Paris, France to Houston.

**Based on the above noted facts, I believe there is probable cause to believe IRSAN made material false statements to the SSA during the SSI benefit reviews conducted on October 5, 2011 and June 3, 2013, in that he falsely stated that Nasim had not resided outside of the United States for more than 30 consecutive days, while in truth and in fact Nasim lived outside of the United States from June 12, 2011 – September 27, 2011.   Per SSA, IRSAN received $2,696 in SSI benefits to which he was not entitled from July 2011 – October 2011. This loss was caused by IRSAN and his failure report Nasim's foreign travel.**

### Conspiracy to Defraud SSA by IRSAN, SHMOU and NADIA
### Unreported Income and Assets

During the course of this investigation, Affiant reviewed bank records relating to accounts owned by IRSAN and members of his family, real estate records, and statements from witnesses, which showed IRSAN and SHMOU owned assets much greater than that reported to SSI.

*Bank Accounts*

In summary, IRSAN and SHMOU used accounts at JP Morgan Chase Bank and First Bank of Conroe to receive monthly SSI benefit payments for themselves and two of their children, Nada and Nasim.   Analysis of these accounts revealed very few deposits were made, outside of the SSI payments, and that the revolving balances remained below SSI resource limits.   Analysis also showed that IRSAN's daughter, NADIA, who is unemployed, maintains a JP Morgan Chase Bank account with hundreds of thousands of dollars.

Records relating to a JP Morgan Chase Bank account, owned solely by NADIA, but containing deposits by IRSAN and SHAMOU, were obtained and reviewed for the time period of July 2006 – April 2012.   Analysis of these records revealed the following information, in summary:

- A total of $255,151.51 was deposited into the account from July 2006 – April 2012.
- A total of $151,226.34 was withdrawn from the account.
- The cash deposits to the account totaled $95,957.50.

- The check deposits totaled $159,194.01.
- No SSA or other public assistance benefits were deposited into this account.
- NADIA endorsed and deposited numerous checks payable to IRSAN and SHMOU into this account.  These checks have a total value of $115,860.94 and were deposited into the account from January 2007 – July 2011.
- In May 2009, NADIA purchased the properties located at 18470 Old Houston Road, Conroe, TX 77302 and 21269 White Oak Drive, Conroe, TX 77306 with funds from this account.  The primary source of the funds used to purchase these properties appears to be the cash deposits that were made to the account.
- A check in the amount $75,000, payable to IRSAN from One World Technologies, was deposited into the account in January 2010.

On May 9, 2013, Bette Ann Braeutigam, with One World Technologies, provided Affiant with records relating to the above noted $75,000 check the company released to IRSAN in January 2010.  The records included a notarized release singed by IRSAN, in which he acknowledged receipt of the $75,000 check as a cash settlement for injuries that reportedly occurred while using a defective Ryobi skill saw on November 16, 2009.  The records also included an internal document indicating IRSAN cut his feet while using the saw, causing him to spend a week in the hospital.   A copy of the $75,000 check issued to IRSAN at 19150 Irwin Keel, Conroe, TX was also provided.

Per SSA, IRSAN never informed them of the $75,000 check he received from One World Technologies and it is suspected that NADIA deposited the check into her account to assist IRSAN in concealing the cash settlement from the SSA, and for the purpose of him maintaining eligibility for SSI.  IRSAN became resource ineligible to receive SSI in the month he received the funds from One World Technologies and received approximately $25,262 in SSI benefits to which he was not entitled to from January 2010 – January 2013.   The loss incurred by SSA was caused by IRSAN's failure to report the cash settlement that he received from One World Technologies.

*Real Property*

On May 24, 2013, SHMOU completed a review of the SSI benefits she received at the SSA office in in Conroe, TX.   During the course of the benefit review, SHMOU stated that she resides in a trailer located at 19160 Irwin Keel, Conroe, TX[2] and that she has lived there since 2005.  SHMOU claimed that she has not lived with IRSAN since she started receiving SSI in 2004.  SHMOU repeatedly denied owning any form of real estate, property or resources.

Continuing on May 24, 2013, SA Acosta informed me that he and other agents followed SHMOU from the SSA office to the property located at 18470 Old Houston Road, Conroe, TX.  Agents later followed SHMOU back to her residence at 19150 Irwin Keel.

---

2 19160 references a mailbox which is located on the 19150 Irwin Keel land tract near a trailer and shed, which Shmou and other family members claim as dwellings.   Affiant seeks to search the entire premises to show the shed and trailer are not residences of IRSAN's family and to search for unreported assets and/or evidence of the fraud scheme.

Multiple FBI surveillance operations and surveillance cameras which began in May 2013 support the fact that all three co-conspirators and the two other SSI recipients in the household, Nada and Nasim, have lived primarily at 19150 Irwin Keel.

During the course of this investigation, Affiant obtained and reviewed records from Old Republic Title relative to the purchase of a residential property located at 19201 Irwin Keel, Conroe, TX 77306. The records disclosed SHMOU and NADIA purchased the aforementioned property on May 21, 2012. The purchase price of the home was $38,000 and it was a cash deal, paid for with cashier's checks, though SHMOU did not report the $38,000 or the residential property to SSI.

On April 30 2014, Affiant obtained and reviewed records from the Montgomery County Appraisal District relative to the ownership history of the property located at 19201 Irwin Keel[3], Conroe, TX 77306, and the property has been owned continuously by SHMOU and NADIA since May 2012.

On May 14, 2014, Nesreen gave a supplemental statement and she stated that SHMOU and NADIA have never lived at 18470 Old Houston Rd, Conroe, Texas 77365. IRSAN purchased 18470 Old Houston and concealed the property in NADIA's name. IRSAN instructed NADIA to say that she obtained the cash to purchase the properties at 21269 White Oak and 18470 Old Houston Rd from her grandfather in Jordan.[4] IRSAN purchased the property at 19201 Irwin Keel Ln, Conroe, Texas 77306 and concealed it in NADIA's name. This property was purchased after Nesreen ran away from home.

*Weapons & Entry without Notification*

Nesreen stated that IRSAN maintained a make-shift shooting range on his rural residence since January of 2001. IRSAN received frequent visits from five or six Muslim families and the men would take their firearms to IRSAN's shooting range. Nesreen stated the men would fire weapons including AK-47 rifles. Nesreen stated that IRSAN personally had a 12 gauge shotgun and a .22 caliber rifle and that she is very afraid of IRSAN. Affiant also obtained information that IRSAN may have prohibited weapons located on his properties.[5]

On January 27, 2014, a confidential human source (CHS)[6], stated that he has known IRSAN,

---

3 Affiant seeks to search the entire property and all structures at 19201 Irwin Keel as an undisclosed asset of SHMOU and IRSAN and to determine if other undisclosed assets are secreted at the location.

4 Affiant seeks to search the entire properties and all structures at 21269 White Oak and 18470 Old Houston Rd as undisclosed assets of SHMOU and IRSAN, and to determine if other undisclosed assets are secreted at the locations.

5 On December 10, 2013, an FBI CHS was interviewed regarding a Houston Police Department case ( # 00653841-G). The CHS stated that he sold a handgun to IRSAN and SHMOU and IRSAN asked the CHS on several occasions to build him a silencer and/or get him a silencer for a gun. (See footnote 5 for CHS credibility)

6 Affiant is aware that the CHS is a local citizen, who knows IRSAN, but does not want his name disclosed. Affiant also knows that the CHS is not motivated by payment of a reward or as a source, nor does the CHS have pending charges or a criminal history. Affiant is also aware that the information provided by the CHS, such as the existence of other properties owned by IRSAN is consistent with the information gathered during the investigation.

SHMOU, NADIA, Nasim, Nile, Nesreen and Ahmed Garcia for approximately (5) five years. The CHS believed it was suspicious that IRSAN, who was unemployed, owned numerous properties at 19150 Irwin Keel Ln, Conroe, Texas 77304, 18470 Old Houston Rd, Conroe, Texas 77365 and 21269 White Oak, Conroe, Texas 77306.   The CHS had visited these properties in the past. The CHS advised that in 2010 or 2011 IRSAN was selling a BMW sedan for $5,000, which IRSAN had acquired from a friend. The CHS was interested in fixing the BMW and purchasing the vehicle.   After the CHS fixed the BMW, IRSAN sold the BMW to another individual.   At that time, IRSAN asked the CHS if he had any guns for sale, but the CHS recommended that IRSAN purchase the guns from a pawn shop.   IRSAN was only interested in purchasing guns from individuals. In 2012, IRSAN begged the CHS to build him a silencer for a gun and told the CHS that he had researched online how to build a silencer.   The CHS has heard IRSAN shooting a handgun at 18470 Old Houston Road.   IRSAN told the CHS that he got a new gun and was shooting it on his property.

*Other Assets*

On May 14, 2014, Nesreen gave a supplemental statement which revealed that IRSAN conceals large packages of cash, passports and important documents in the attic under the insulation at 19150 Irwin Keel Ln.   IRSAN has a fire safe box concealed inside the hallway's air return duct, which is located under the air conditioner control module.   The fire safe box is attached to the wall studs at eye level and NADIA would have to enter the air return duct and stand up to access the safe.   IRSAN also has a concealment area in NADIA's bedroom closet above the closet's top shelf.   IRSAN has a hidden compartment in the laundry rooms ceiling and he conceals items of value and guns inside SHMOU's bedroom which is locked with a padlock. SHMOU's personal belongings are also inside of her bedroom.   IRSAN buried a dryer's tub in the backyard and concealed it with dirt and leaves. IRSAN utilizes the concealment sites to hide documents, jewelry, gold, diamonds, pearls and guns. Nesreen has observed IRSAN with a large shoe box filled to the top with jewelry, (10) ten gold nugget 1 oz bars, diamonds and pearls.[7]   Nesreen believes that IRSAN has similar hidden compartments at 18470 Old Houston, 21269 White Oak and 19201 Irwin Keel Ln.

Nesreen stated that IRSAN only has one vehicle Toyota Tundra truck in his name. IRSAN purchased a Toyota Camry and concealed it in the name of SHMOU because she can have one vehicle per SSI rules.   IRSAN purchased a Toyota Corolla and concealed it in the name of NADIA.   IRSAN had a BMW sedan that he bought and sold. IRSAN only reports his Tundra as an asset to SSA and conceals the other vehicles from SSA.

Affiant is aware through the investigation that IRSAN and SHMOU were involved in the purchases of vehicles with assets that were undisclosed to SSI, such as cash or credit cards. A 2010 Toyota Corolla with Texas license tag CV8-J205 was purchased for $15,617 in cash on May 12, 2011 and placed in Nadia's name.   A 2008 Silver Toyota Camry with Texas license tag

---

7 IRSAN purchases jewelry from a Middle Eastern male at Diamonds Unlimited in Houston.

BH8-G406 was purchased in February 2010 for over $16,000 for SHMOU in the form of $5,000 cash, a visa charge of $2,837 and a mastercard charge of $10,000. A 2005 Mitsubishi Galant was purchased in the name of SHMOU in February 2008 for $7750 in cash and a maroon 2001 Toyota Tundra bearing license plate 42DBJ9 was purchased in January 2009 for $8,400 in cash. Vincent Nweke stated to agents that he sold a 2004 Isuzu license plate CM9J767 for $3,000 on November 28, 2011 to IRSAN but that the buyer was listed as Ahmed Garcia.   Agents also observed a black Ford Expedition with plate #7GKH89 partially covered by dark plastic and grey cloth-like material which was last observed at 19150 Irwin Keel, Conroe, in Montgomery County, Texas 77302

**Based on the above noted facts, Affiant believes there is probable cause to support that IRSAN and SHMOU intentionally failed to report and hid assets with the assistance of NADIA in order to defraud SSI and that such assets are hidden within the properties and vehicles described in this affidavit.**

**In addition SHMOU made material false statements to the SSA during the benefit review conducted on May 24, 2013, in that she denied owning real estate or resources and that SSA relied on these statements in determining her continuing eligibility for SSI.   Per SSA, SHMOU became resource ineligible for SSI in June 2012 after purchasing the property located at 19201 Irwin Keel, Conroe, TX 77306 in May 2012.   As a result, SHMOU received approximately $17,000 in SSI benefits to which she was not entitled to from June 2012 – May 2014 and evidence of the false statements is located on the premises described in this warrant.**

### Conspiracy to Defraud SSA by IRSAN, SHMOU and NADIA
### False Statements to increase benefits

On June 3, 2013, IRSAN completed SSI reviews for his own SSI benefit claim and the benefits he receives as the representative (fiduciary) payee for Nada and Nasim Irsan.   IRSAN claimed that he lives at 19150 Irwin Keel with six minor children.[8]   IRSAN never acknowledged that he was married to SHMOU and only referred to her as the mother of his children.   IRSAN stated that SHMOU and Nasim live with NADIA at 18470 Old Houston Road, Conroe, TX and that both SHMOU and Nasim pay NADIA rent to live there.[9]

In completing the SSI benefit review for Nasim's benefits, IRSAN stated that Nasim has not been outside of the United States for more than 30 consecutive days since he started receiving benefits in February 2011.   IRSAN reported that Nasim began living at 18470 Old Houston Road in July

---

8 IRSAN's family receives increased benefits if he reports that they live in separate residences.

9 Affiant has knowledge that SHMOU resides at 19150 Irwin Keel based on an encounter with SHMOU, on April 09, 2014 by the law enforcement.   The FBI conducted a consent search of Fire Tower Acres, Lots 54, 55, 56 in Conroe which is adjacent to IRSAN's residence at 19150 Irwin Keel Ln.   On three occasions, SHMOU exited IRSAN's residence at 19150 Irwin Keel to speak to FBI and/or her attorney.   On each occasion, SHMOU exited the residence with a different change of clothes and re-entered the residence. During this encounter, SHMOU stated that she owned the property at 19201 Irwin Keel Ln, Conroe, Texas 77306.

2012; that he lives with SHMOU, NADIA and Yasmeen Irsan (age 2); that Nasim lived at 19156 Irwin Keel[10] prior to moving to the Old Houston Road residence; and that he pays his sister, NADIA, $500 per month in rent.

On May 14, 2014, SA Egeland, HSI, provided Affiant with additional information relative to the foreign travel of IRSAN and Nasim.   The DHS/HIS records revealed IRSAN and NASIM departed the United States bound for Jordan on December 15, 2013; that IRSAN returned to the United States on January 1, 2014; however, Nasim did not return to the United States until May 1, 2014.

Per SSA, IRSAN failed to report Nasim's 2013-2014 foreign travel.   As a result, IRSAN received $3,605 in SSI benefits to which he was not entitled to from January 2014-May 2014, when he had first-hand knowledge of the foreign travel and was aware of his reporting responsibilities as a representative of the payee.

In completing the SSI benefit review for Nada's benefits, IRSAN stated that Nada lived at 19150 Irwin Keel from 1993 - April 2010.   IRSAN reported that from May 2010 to present, Nada has lived at 21269 White Oak Drive, Conroe, TX. IRSAN also stated that Nada pays NADIA $300 per month in rent to live at the White Oak Drive property, though agents found a report of an incident in which showed the property was in reality rented to a third party by IRSAN.[11]

On May 14, 2014, the CHS[12] provided information regarding IRSAN and his family.   The CHS advised that he has known IRSAN, SHMOU, NADIA, Nasim Irsan, Nile Irsan and the other family members since approximately 2009 or 2010 and they have resided together at IRSAN's residence at 19150 Irwin Keel Ln, Conroe, Texas 77306.   IRSAN introduced SHMOU as his wife and they are together most of the time.   The CHS has visited IRSAN at his residence on numerous occasions and SHMOU, NADIA, Nasim, Nile and the other family members have all been present at the residence.

On or about April 10, 2014, the CHS entered a travel trailer (camper) located at IRSAN's residence at 19150 Irwin Keel Ln, Conroe, Texas 77306 and observed that the camper was uninhabitable with no running water or electricity.   The camper had holes in the floor, walls and ceiling. None of SHMOU's personal belongings were inside the camper and the camper only had furniture and chairs.

---

10  19156 references a mailbox which is located on the 19150 Irwin Keel land tract near a trailer and shed, which Irsan claims that a fiduciary family member, Nasim, resides. Affiant seeks to search the entire premises to show the shed and trailer are not residences of IRSAN's family and to search for unreported assets and/or evidence of the fraud scheme.

11  On January 07, 2012, MCSO officers (MCSO Case # 12A000374) responded to an assault call at 21269 White Oak Dr, Conroe, Texas 77306.   Edward Knight father of tenant, Joanna Knight, reported that the incident started because IRSAN, the landlord, told Knight on January 06, 2012 to move out of the residence by January 07, 2012.

12  This reference to the CHS is that same individual referenced earlier in footnote 4.

On or about April 10, 2014, the CHS was at IRSAN's property at 19201 Irwin Keel Ln, Conroe, Texas 77306 and observed a mobile home and a double wide mobile home on this property.   The mobile home and double wide mobile home did not have electricity or running water at either location. The double wide mobile home located at the rear of the property did not have a drive way leading to the residence and no tire marks were observed leading to the residence.

On May 14, 2014, Nesreen Irsan (see initial statement above) provided the following additional information.   Since 1995 to present, IRSAN, SHMOU, NADIA, Nada, Nasim, Nile and other children have resided at 19150 Irwin Keel Ln, Conroe, Texas 77306 and they have never resided at any other location.   SHMOU has never lived in the camper on 19150 Irwin Keel Ln and IRSAN placed a mailbox with a fictions address of 19160 Irwin Keel Ln to defraud the SSA.   The camper is uninhabitable; it has holes in floor, walls, and roof and smells of mold. SHMOU has never had her personal belongings inside of the camper and she has a bedroom which is locked with a padlock at 19150 Irwin Keel Ln.

Nesreen advised that NADIA has never resided at 21269 White Oak, Conroe, Texas 77306. IRSAN purchased 21269 White Oak and concealed the property in the name of NADIA to defraud SSA by claiming that Nada lived at that residence. IRSAN instructed Nesreen that she would be NADA's representative payee for SSA benefits.

NESREEN stated that SHMOU and NADIA have never lived at 18470 Old Houston Rd, Conroe, Texas 77365. IRSAN purchased 18470 Old Houston and concealed the property in NADIA's name. IRSAN instructed NADIA to say that she obtained the cash to purchase the properties at 21269 White Oak and 18470 Old Houston Rd from her grandfather in Jordan.

**Per SSA, both IRSAN and SHMOU received SSI benefits to which they were not entitled to by concealing the fact that they resided together at 19150 Irwin Keel.   The properties owned by NADIA at 18470 Old Houston Road and 21269 White Oak Drive are a part of an ongoing scheme to defraud the SSA, due to the fact that IRSAN claims Nada, Nasim and SHMOU live at these properties, while SHMOU claims she lives in a camper located at 19160 Irwin Keel.   Per SSA, the continued concealment of all four (4) SSI recipients true living arrangements has caused a loss to the federal government.**

### Other Information Supporting Continuing Scheme to Defraud SSA

On February 22, 2013 Nesreen stated that IRSAN has many sources of income which he fails to report.   As an example, IRSAN was a friend and strong supporter of local mosques.   He picked up checks and he received cash from the at least one local mosque, though she did not know why the money was obtained.   Nesreen stated that she observed IRSAN conceal over $100,000 in U.S. currency in the attic of his residence, which is located at 19150 Irwin Keel Lane, Conroe, Texas.

Nesreen stated that IRSAN also smuggled large amounts of US currency while traveling from Houston to overseas destinations. IRSAN would carry $9,000 and instruct his family members or friends to conceal the cash while traveling abroad. IRSAN also concealed large amounts of cash in the lining of his suite cases and instructed his traveling companions to do the same.

Affiant obtained information from a local homicide investigation which corroborated Nesreen's statement about IRSAN's access to foreign assets.   On May 1, 2013, Sergeant James Dousay, with the Harris County Sheriff's Office, provided Affiant with photos from a search warrant that was conducted on November 21, 2012 at IRSAN's residence, 19150 Irwin Keel, Conroe, TX. The search warrant was executed as part of a homicide investigation relating to the murder of Coty Beavers in which IRSAN is a suspect.[13]   One of the photographs provided appeared to be a check drawn off an account from the Bank of Jordan; however, the check is written in Arabic.   The check was subsequently provided to the FBI for translation into English.

On May 31, 2013, SA Acosta informed Affiant that FBI translators reviewed and translated the check into English.   The check, in the amount of $2,500 Dinars, was issued to IRSAN from his brother, Khalid Mahmud 'Awad al-Rawabidah, on June 30, 2007.   The value of the check in U.S. Dollars was approximately $3,500 when it was received by IRSAN in June 2007.

Per SSA, IRSAN never disclosed the above noted check and the concealment of these funds caused a loss in excess of $3,700.   In summary, IRSAN was ineligible for the SSI payments he received from June 2007 – November 2007 based on his receipt of the above noted check.

---

13 Coty Beavers is the husband of Nesreen who was murdered on November 12, 2012.

## CONCLUSION

Based on the aforementioned facts, it is believed that Ali Mahmood-Awad Irsan, Shmou

Ali Alrawabdeh and Nadia Irsan are involved in a conspiracy to defraud the United States of

benefits under the Supplemental Social Security Income program by concealing assets and

providing false statements to the Social Security Administration in violations of the above sited

statutes.

Gary Dickens
Special Agent
Office of Inspector General
Social Security Administration.

Sworn to and Subscribed before me this ____, day of ____, 2014
and I find Probable Cause.

Nancy Johnson
United States Magistrate Judge
Southern District of Texas

16